May it please the court, I'd like to reserve four minutes for rebuttal. Ma'am. Thank you. Patrick Erta for the United States. Your Honors, mandamus is warranted because the district court made clear legal errors in its which will result in significant harm and which cannot be corrected on appeal. As we've discussed in our brief, there are two errors in the district court's analysis that I'd like to start off with and to discuss before turning to why mandamus relief is appropriate in this case. First, the district court erred in expanding 6103 H4B to include disclosure based on tax return information. And secondly, the district court erred by finding that the information here was directly related to the resolution of an issue in the proceeding. As to the former, the statutory language in H4B is plain and clear. It states that the disclosure is proper only if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding. Returns and return information are statutorily defined terms and encompass different information. They're different categories of material. So return has a very discrete meaning, is your argument? Yes, it does. How about in 6103 B6? It's the same thing there, right? Well, in 6103 B6, it deals with the taxpayer identity. Right. And taxpayer identity actually is encompassed in return information, not return. I'm asking about the word return as used in B6. Okay. Because I understand. I mean, I follow your argument about H4 and your argument that return is different than return information. Sure. And return is a term that we must use precisely here. That's correct. And I guess the question that I have for you is that that term is also used in 6103 B6, which you know defines taxpayer identity. Correct. And it says it includes the name of a person with respect to whom a return is filed. So it's fair to say here that the plaintiffs in this case have not filed any returns, correct? That's right. So this provision would not make their names return information, correct? I don't think that it would be. Their names would be return information under B6. Right. But I think that under the broader definition of... Data collected? Exactly. Return information under... It could. So why bother having B6? I think that in that case, B6 is simply a clarification that taxpayer identity definitely applies to people who file a return. That's the best argument you have? I mean, it's surplusage, basically, is what you're telling me. Well, I think that that actually just goes to how broadly the term return information, the kind of broad category of information... That begs the question whether the name of an applicant is part of that. Well, I think that it is part of that. I mean, it's definitely not a return. I think that we have to go back to that. It's not an item on a return. It's not an item on a return, so H4B, which is the operative provision, would not apply. So B6 might be seen to be somewhat repetitive. Quite frankly, statutes sometimes are repetitive. Well, we try not to read them that way. Indeed. And I am kind of scratching my head as to why would we bother having B6 if, as seems so often to be the agency's argument, data collected captures this as it seems to capture so much else? Well, and again, Judge, I think that the best that I can say is that we're being very precise that taxpayer identity would count as return information and as to return. I understand your argument. Could I just jump in for just a second? Sure. And then Judge Kethledge will continue. Okay. I mean, essentially, we're trying to figure out whether return information goes beyond something associated with a return. It certainly does. You know you can't give out the return except under limited circumstances, and so this says you can't give out information related to a return, right? Well, actually, the— I mean, it may go beyond that, but that's what's at the heart of this. Now, we know there isn't any return. These are all applications. So then you go to data collected, right? Actually, Judge, would you mind if I stop you there? I'm sorry. Go ahead. Why don't you just tell me why I'm wrong once I put a question mark at the end of the question? Okay. Sounds good to me. So data collected along the discussion that you're having with Judge Kethledge, if I understand it right, we looked at data collected, and it says with respect to the determination of the existence or possible existence of tax liability. In connection with these applications for tax exemption, just as they're not a return, the name of those applications, it also seems to me, doesn't have anything to do with the existence or possible existence of tax liability. So I'm trying to figure out why then the name on an application would be return information. Well, Judge, I think that it does eventually go to the existence of tax liability, whether these are tax-exempt entities or not. So they're applying for the status. And I think that we have to remember – You're saying that the name on an application is collected to determine the existence or possible existence of tax liability at the phase when you haven't even acted on the application? I think that that's one of the reasons you're collecting that information. You're eventually going to determine that tax liability. And, Judge, I just want to refocus the argument. Everyone agrees that this is return information. Well, you know, I mean, you're here seeking extraordinary relief. That's right. And just because parties adopt a particular interpretation of a federal statute does not mean we have to, in a published opinion or any other opinion, if we think it's wrong. So this is something we do want to talk to you about. Certainly. And I don't care that they haven't challenged this point. And that's why I'm going back to the beginning here. Why is this return information? It just doesn't make sense that it is return information. Well, again – Whether everybody agreed to that or not, just explain to us why it's return information. And what I would say is return information is a broad category. Remember, 6103 is supposed to be default confidentiality for things you submit to the IRS. Things you submit to the IRS. Or things that are generated by the IRS. Such as the names of employees that are working on somebody's file. I mean, okay. Yeah, I mean, that is exactly in – Is there any taxpayer privacy interest whatsoever in the names of the IRS employees who are working on their file? I do think that there is a generalized taxpayer privacy interest regarding all aspects of an investigation. Specifically regarding that. What is it? Why would they care? I hope I didn't interrupt your line. No, go ahead. I think that a third-party taxpayer who is unrelated and did not want to go forth, because, of course, under A, a party can actually get these files. Why do they care if it's known that Sally Jones worked on their application rather than John Smith? Well, I think that they care about all aspects of the investigation. I think that – You don't have any specific reason why they would care about names of employees, for example? I think that they might care about how the investigation was conducted. So, yes, I think that the name of the employee, the control date – It seems like the IRS would care a lot more. The IRS would care – The IRS – I mean, I'll just be frank with you. It seems to me that the IRS is the one with the interest to keep a lot of this stuff suppressed. And this statute, this provision, was enacted after Watergate, right? And it's not an IRS protection statute, right? That's right. It's a taxpayer protection statute. Right. And I'll just be candid with you. One overarching concern I have about your argument in this case and your argument in a lot of other cases that I've read getting ready for this case is that this data-collected language in 6103 seems to be used by the IRS as a way of never having to hand over bad paper in a case brought by a taxpayer. And given the reason why we have this statute, that's troubling to me. I understand your concern, Judge. But what I would say is that Congress, when passing this statute, gave a very expansive definition for a reason. It's because Congress was concerned about all aspects. You're right. Things generated by the IRS might seem to have more meaning to the IRS than it does to a third-party taxpayer. Or even more embarrassing to the IRS. Well, certainly, Judge, but the fact is Congress expressly put that in there. Well, there is this point about with respect to a determination and what is the connection with a determination that's necessary. But I understand your point. I'd like to ask you about 6104. Sure. 6104 is, I'm sure, it's not mentioned in the briefs, as 6103b6 is not mentioned in the government's petition. But 6104, as you know, makes applications for this sort of tax-exempt status fully public information once they are granted. Sure. And I guess the Form 1023 at the top, right, says if exempt status is approved, this application will be open to public inspection. That's right. And the approval rate for these things is pretty high, isn't it? That's right. North of 90% usually? I think that's right. So fair to say that some of the names at issue here relate to approved applications. That's correct, Judge. So why aren't those names now entirely of a public character? They are of a public character, and there are other ways to discover this. But if they are of a public character, why are we here, at least as to those names? Well, what I would say is because the rulings at issue went much broader than just give us the public names. You have some serious arguments about H-4, and they're going to hear about that. But as to entities whose applications were approved, I'm, again, just sort of stuck at the threshold question of, well, why are those names confidential when, in fact, anybody can go to an IRS office and read the whole application? And I think that that's right. And just to give you an update, Judge, on what's happening, the class has been certified, as we filed in the 28-J letter, and those names of people who come within the class are being notified. So we're going to have a class here. So the IRS isn't hiding the ball as to names. It's just saying the names cannot be discovered using the item test. The item test is very precise in what it allows. But, I mean, why do we even get to the whole H-4 analysis if the information is no longer confidential? Because the information is not just the name of the individual, and that's not what the rulings at issue said. The rulings went much further. They had specific discovery regarding these lists. Your petition, and I must say that it's a very carefully—I've written briefs. I can tell when a brief is being written very carefully. The wording is very careful. You say names and identifying information. That's it. That's the only putative confidentiality interest in front of us. So, you know, speaking for myself, that's all I'm going to consider with respect to this petition. So, again, and you say they're confidential. But as to presumably most of them, they're not confidential anymore, and that's why I'm trying to figure out why this petition makes sense in light of that fact. It makes sense because of the importance of this provision, this exception to the general confidentiality rule. H-4. H-4. Okay. So, I mean, you're very concerned about the H-4 interpretation. I understand that. Fair to say you're less concerned about having to release names of entities whose applications were approved. That's right. But not, as you noted, Judge, not every entity's applications approved in this process. So 6104 doesn't get you all the way there. How about 6110, which obviously relates to organizations— I'm going to use the time for the person who didn't show up, David, if that helps. I'm just kidding. Okay. 6110, as you know, relates to applications that are denied, and those generally become public information except, as I'm sure you know, not the names. Right. Helpful to you. But that provision does clothe the district court with some ability to release those names, and it's a real thicket. But one seems, I guess, sort of potentially applicable on its face, and I wanted to ask you about it. It's 6110, I think, M, which—let me just dig it up here. Judge, would you mind if I got 6110? No. Feel free. Yes, 6110 M, it says exclusive remedy, except as otherwise provided in this title or with respect to a discovery order made in connection with a judicial proceeding. Secretary should not be required by any court to make any of this stuff available. And I guess my question is, well, don't we have a discovery order entered by Judge DeLotte in a judicial proceeding? Well, I think that that goes to kind of more generally the written determinations, but I don't believe that it relates precisely to the releasing of names and other identifying materials. And just to loop back on one point, Judge, when you said that you wanted to consider only the names and identifying information, I'd also note that we talked about the USA Today spreadsheet. We didn't talk about the different categories in it, but that was part of our brief, and that actually goes much further than taxpayer and identifying information. I don't read your—that's not an argument in your brief, in my view. Anyway, I mean, I think you guys are very precise about what you say is protected, objectionable under 6103 here. Well, and if there's any lack of clarity in my brief, I apologize, but when we talked about the orders, we meant to—I mean, we described the USA Today spreadsheet. At this point, your petition is going to speak for itself as far as I'm concerned. I'm not looking for an embellishment here. So just so that I understand where we are, you're critical of the route that Judge DeLotte took here in connection with the names, but you've conceded that the names have already been released. All of them? No, we have not conceded that. The names with respect to the approved applications, you said, have been provided in connection with class certification? No. Right now, we're still in the class notice phase, so the names haven't been provided, but members of the class are receiving notice, and I believe there's a 35-day period in which— Notice from whom? Notice from both parties. The notice is sent out by the plaintiff. That's right. Judge DeLotte approved a specific procedure here where it was sent out and constructed in a different way, but there's a 35-day opt-out period to the— Who is sending out? Who has the names in order to send out the notice? The United States has the names. All right. So you are notifying potential class members, but you still have refused to turn that over. That's right. And they'll have the chance to opt out. Now, didn't you say, however, a moment ago, that there was another route where they could have gotten those names? Well, I was just saying that under 6104, it's true that once an application is approved, then that is public information that can be discoverable. But they're never going to be able to connect the name— I mean, let's say just theoretically they go down to the IRS headquarters or wherever this stuff is, and they start looking at approved applications. They're not going to be able to know whether those applications were ones that were caught up in this be-on-the-lookout business, right? And thus are members of the class. Actually, what I would say was, based on how the class was certified, I think that that would encompass a lot because the class was— But they're entitled to all, correct? Well, they're—actually, no. I don't think that 6104 gives you a mechanism where you can do that. What I'm saying is they're entitled to know who the members of their class are. Right, and that's why we're going through the class notice right now. Okay, but you're doing it, right? I think that this was a joint order by the parties or the court of pre-determined procedure. Yeah, I'm getting beyond, frankly— Let me reform the question, if I could. Sure. You want us to grant mandamus, which is an extraordinary remedy. You seem to say that your concern is the district court's construction of 6103H4B, yet you go on to say there are other avenues, at least with respect to approved applications, where the names can be obtained. I think that that's right. So why would we grant mandamus in connection with an order to turn over names that you're admitting can be obtained in another way? Well, for precisely the same reason that the federal circuit ruled on mandamus in Panasonic. Because 6103, which is at the heart of this case—I mean, it's the great irony, right? It's at the heart of this case. And the problem with 6103 is that you need to make sure that the different provisions are actually applied correctly. So when the 6103 provisions are abused or misinterpreted— I get that, but presumably the correct or incorrect application of 6103 is going to flow from the ultimate resolution of this lawsuit. You want us to jump in in mandamus because you started your argument out by saying there would be irreparable injury if this order is enforced, yet you then admit that that information is otherwise available in another way. So I'm not saying that you should be foreclosed from eventually winning or losing under 6103. I get that, but I don't understand why we grant mandamus preventing them from something that you say they can get anyway. Well, again, Judge McKee— As long as they do it right. Judge McKee, I don't think that they get all this information. So, no, I disagree. Let's go back to what my question was. It was a while ago, I admit. The question was the names of applications that were on the BOLO list that have subsequently been approved because they seem to be available under 6104, and I thought you agreed with that. Any application that's approved can be viewed and inspected by the public under 6104. So why would we grant mandamus in connection with, even if the district judge was wrong, in connection with names that are related to subsequently approved applications? Why would we grant mandamus? Because, again, the district court's order went beyond that material. And why do we correct that via mandamus as opposed to letting that be corrected, if wrong, throughout the normal course of the litigation, if the information's available anyway? Okay, Judge McKee, I'm sorry. I was confused as to the nature of your question. So there are two different 6103 inquiries here. What we're concerned about isn't the, right now, the underlying 6103 case. We're only concerned about the 6103 H4B interpretation, which will give up confidential information, which this court has repeatedly seen. I got that. You understand I'm only asking about names right now, right? And I'm only asking about names in connection with what then turned out to be successful applications, which I'm gathering is the bulk of these applications, right? Yes. So even if Judge DeLatte was wrong under H4B, presumably you can get that corrected as the litigation unfolds, right? No. I disagree, Judge McKee. I'm not saying whether you can undo any harm that's created. You can get the misinterpretation corrected later on in a case, can you not? Again, I do not think that you can. Because you don't have the right to appeal it, or what? Well, I think that this is one of those discovery disputes that, I mean, it's like the giving up of information under the attorney-client privilege. I guess you're right. At a certain point in time you can correct it later on if you don't worry about the harm, but it's all interwoven. And I'm trying to figure out where is the harm here if the names, I'll bet perhaps not properly under 6103 H4B, can be obtained properly from the IRS simply using another section? Well, and what I would say, Judge. Why are you then harmed if it's publicly available now anyway? The names of the folks who have been, or the entities that have been approved, I agree, are public. So there would be little harm. But is the fact that you can't tie those hundreds of names that are related to approved applications to who was on a BOLO list at a particular time, is that where you're saying there's a problem? I think that, as I started off, I think there are several problems. I don't like the interpretation. You want that changed. Judge McKeague is suggesting you can get that later, but you're really upset about that interpretation. And you think there are some names that you don't have to cough up. That's kind of what you're saying there. And other identifying information, and quite frankly, again. I mean, I got it when you go from names to other identifying information. So you're saying there's other identifying information relating to those names that were obtained in connection with the application. Right. And just very, very briefly, what is that other identifying information? Well, the one that we specified in our brief was control dates, which has been a bit of a flashpoint, basically, when the inspection occurred. And then as an addendum to the response, there was added the USA Today spreadsheet itself, where there are a number of different categories of information that plaintiffs would like verified or not verified. What's the most important thing other than the name that you're worried about trying to protect, the control date? I think that all of it is important. What is the most important thing that you're trying to protect aside from the name? I would say that the comments, the control date, I think that all of it is important. I mean, if one wanted to be cynical, we'd say the comments. This isn't about names. It's about comments. That's what a cynic would say. Well, I would say it's about protecting all of that information because that's what the system Congress— Did you say names and identifying information? Control dates is just the date the thing is, the application is filed. Is that right or am I wrong? I think it's the date that the inspection began, but you might be right on that, Judge Kellogg. And why is that so critical to rise to the level of mandamus? The name, once the name is out, the name's out, you can't get it back. I get that, but who cares about control date in terms of rising to the extraordinary level of mandamus? Just give me a practical two-sentence reason why that rises to the level of mandamus. It rises to the level of mandamus because it's confidential information that belongs to third-party taxpayers. That's exactly what 6103 is designed to protect. That's why it's mandamus. That's why the Federal Circuit said this was mandamus. Why does it even belong to the taxpayer in the sense that it isn't part of the application? If it was part of the application, I get that. It's something you assigned to it. But you have rights, I think, under 6103. You as the taxpayer have the expectation of confidentiality of all of the inspection. So it's not just I submit my application so I'm all good and we're done. If the application is approved, is the document that then becomes available for inspection by the public going to disclose when it was filed? It will disclose when it was filed. It won't disclose anything about the inspection. All that deliberative material has been filed. Excuse me. Sorry, Judge. So part of the control information is also going to become public in connection with when the name becomes public if it's approved. Sure. So there might be other stuff, and Judge Kethledge points to comments. So if there's a comment in there that says we should stall this taxpayer until after the election or we should stall this taxpayer application as long as possible, that's not going to become public then later on. Any of the deliberative material, right. And is that part of this mandamus petition or isn't it? Well, I would say that it is because of the USA Today spreadsheets. Well, I've already spoken my mind on that subject. Let's say there were, you know, a bunch of Let's let him say his mind for just a second. So aside from the fact that it's on a USA spreadsheet, you say because they're asking for the information on a USA spreadsheet and that had a whole bunch of columns apparently beyond name and control number, therefore you say it's part of mandamus, right? Is that right? Yes. Sorry. Can I respond a little bit more fully? Okay. Okay. Sorry. Just to be clear, the discovery issue says please produce all charts, lists, spreadsheets, or indexes of groups who had their applications for tax exemption selected or flagged by the IRS for heightened review based on the emergent issues tab of the BOLO. Please produce the document titled Advocacy Case Tracking Sheet and also the USA Today spreadsheet. So I do think that it is a little fuller than what's suggested. Okay. That is what the judge ordered, but your petition is narrower. You said our objection is to the disclosure of names and other identifying information. You say it twice. You say it very carefully. You don't say all this other stuff. And so, I mean, anyway, your petition says what it says. Let me put it another way. Okay. Sure. Maybe what Judge Kethledge is trying to figure out is the same thing that I'm questioning. Sure. Is the control number and a comment, I mean, for example, is that other identifying information? I would say so. Why does a control number, meaning when it was filed or acted upon, and a comment made about it, why is that identifying information? It is information. I get that. But why is it identifying information? Well, I think it's identifying information because it discusses, you know, whether you're part of this allegedly heightened review. So I... I mean, aren't you taking the word identity in identifying information and really extending it beyond any reasonable interpretation? I don't think so, Judge. It seems to me identifying information is information that helps identify something. Such as the stuff that's spelled out in 6103B6. Yeah. So if you've already got the name, then why is this other stuff then even identifying information? It is information, but it doesn't seem to be of an identifying character, if you see what I'm saying. Again, Judge, to go back to my refrain that you probably are tired of hearing, but it's important, and it's the type of information that's protected because it's taxpayer return information. They can't get it through the item test. Even though it's not on a return. Even though it's not on a return. Especially because it's not on a return. I think we've probably beaten this. Real quick. Yeah, sure. You've got a different point. I mean, let's say there are a bunch of applications, 501C applications from progressive groups that are flagged for, frankly, the same kind of treatment that the IG says happened in this case. And let's say there's a spreadsheet there that, in the comments section, any name, any applicant whose name has some trigger words, in the comments section, it always says delay application until after next election. Boom, boom, boom. All the way down the line. IRS puts that in there. Is it the IRS's position in this case that in a similar class action where you have named plaintiffs and they're trying to identify all the people who are similarly treated, that the IRS does not have to disclose to anybody the fact that it had these kinds of notations in a comment because that's data collected, and for the sake of the taxpayers, we are not going to let that bad paper come out? Is that the agency's position? No, the agency's position is this, Judge. You can't use H-4B to get there. The possibility of getting there is through H-4A. You get your class certified, and at that point in time, they have access to all their files. They're trying to, as Judge DeLotte, I think, repeatedly, with frustration, said in this case, they're trying to conduct class discovery about who the class is. That can matter in a certification determination, for sure, and the parties and the district court are entitled to figure out who is in the putative class here, and you guys are saying you don't get to find out. Let's say the class is to find everyone who had this entry. We had it, and everyone else who got treated this way should be in the class, and your position would be, no, it's not relevant to anything. You guys don't get it. No, our position, Judge, is it's not directly related for purposes of the item test, and I think that the proceedings here directly illustrate that it wasn't. The class was certified. The threshold point I'm going to, which is the point I made earlier, and it's what really troubles me about the agency's position in interpreting 6103 for a long time, is that you would say that that entry, delay until after the next election, is data collected by the Secretary for purposes of a determination and therefore presumptively something the agency can keep secret. Part of taxpayer return information includes data generated. I'm sorry to parse. You're saying presumptively the agency gets to keep that secret, even if it's totally inculpatory to the agency. The agency, in the name of taxpayer privacy, gets to keep it secret. Do you understand why those of us who are not in the agency would have some real concerns about that threshold position? Of course. Okay. I understand that, but my only point is, Judge— Still, it shouldn't be coughed up here. Not through the item test. There are other mechanisms to do this that we've talked about. That's a fair response. Maybe we should hear about H-4 from these folks, give you a breather. I really appreciate your patience and your good nature throughout the questioning. Thank you so much. I'm sorry, I don't mean to run this, David. You took over a while ago. I'm sorry. You're doing a fine job, too. May it please the Court, Eddie Grime on behalf of NORCAL and the plaintiff class. I'm fully aware, having listened in, that we're going to move to H-4 and that I'll get many questions on that.  I have a couple of things I think would be helpful for the Court to consider in terms of what it is we're litigating here. Attached to one of our motions, and in the record as Exhibit A, is one of the spreadsheets. It's document 158-1, starts on page 3400, and basically this is the political advocacy case list that was kept. And I know we're not in a trial court. What is this? Where is this in the record? This is at document 158-1 in the trial court. Is this the USA Today? This is not the USA Today list. Is this one of the things that's subject to the petition? It is. All right. Well, how come you're holding it then? Well, I'm holding it because it's not attached to our response. It's attached to the underlying records. We talk about it, and as I read through the pleadings getting ready, it occurred to us we need to go back to the spreadsheet itself because an important point, Your Honors, is that the control date and many of these other columns have been disclosed to us in this case. What's been redacted is a column that has the organization names. Those have been redacted under 6103, except for our ---- I guess when was this disclosed to you all? Was this after the petition was filed? No, this was disclosed ---- Pre-certification? It was disclosed pre-certification. We filed it as an exhibit on May 5, 2015, as we were litigating the question before the district judge. Let me ask you the question this way. I've pulled up the petition for the writ of mandamus, and in the conclusion it just asks us to issue the writ, vacate the discovery orders of April 1 and June 16, 2015. That's all it says in the conclusion. Now, I'm gathering that there are items that were required by the district judge to be turned over on those two dates that have now subsequently been turned over? No, the district judge stated its decision so that this court ---- first so that the IRS could decide whether to come to this court. Then after they did that, they filed the petition, and so it's been stayed continuously since that time. All right, let me put it another way. Have you gotten, by some means, whatever they may be, some of the information that you're seeking in these April and June discovery orders? No. You don't have any of that anywhere? I could say we're seeking two things. Number one, we're seeking the names, which is the only thing redacted, but this spreadsheet ---- Now he's saying that you can get those names in another way. Your Honor, much of that is correct. There will be a way to get most, if not all, of these names. I don't think any of us can say today whether these other routes will get us all the names, and one reason we wanted to come here and didn't suggest that it was moot is that we don't want to be back here after six or eight months of grinding merits discovery with the 6103 issue still unresolved. Well, this may be a naive question, but have you been contacted by the mediation people at the circuit to simply sit down with the IRS and say which things they will turn over to you because they know you're going to get it eventually anyway? Well, I can say no. That's a yes or a no? The answer is no, but I can say this, that Judge DeLotte invested substantial time in this matter. We had substantial meet and confer. We were meeting and conferring on this issue over a year ago before we even went through all of our discovery procedures. There was a motion to reconsider. Much time has been devoted to this at the district court level, and so, frankly, I don't know that mediation at this level would have helped much. But I want to focus on this issue, Your Honor. Much of this information is in our hands. The control date is in our hands. Those dates are really important, actually, because then we can see at what rate were people being filtered into this. We believe that as we take each one of these tracking spreadsheets, it will be sort of a snapshot of the way this class grew. So if you have the control dates, are they matched up with names, or is that what's redacted? That's what's redacted except for the original name plaintiffs. Those are unredacted. The other important thing is there are two tests involved here. This is all about the item test today. Can you give us a page ID number in our record before us? I do have copies here. I did not want to come and hand out copies of something in the record. I don't want a copy. I just want the page ID number. The page number is 3400. That's in the record below? In the record below. Document 158-1, page 3400. And that's the only such spreadsheet that you have in your possession? I want to say we may have other spreadsheets with redactions, but this was the latest one. This is the biggest one. I interrupted you, so go ahead. The other, Exhibit C, which we filed here, is the USA Today spreadsheet, and I think you all have seen that. It's a different kind of spreadsheet, and it was prepared by a different person for a certain purpose midway through the targeting process. At any rate, these two different tests are at play here, and it's really important to understand why we're going to get other information through that test or through 6104, as the court pointed out and as we did not brief. Just out of curiosity, are you at liberty to say, where did you get this political case tracking sheet that said 3400? Well, the IRS produced that to us in discovery with redactions. So actually they've been willing to give you all of this taxpayer identification stuff just not attributed to a particular taxpayer. Except for our own clients. Or, excuse me, particular applicant. They're not taxpayers. That's right. Although I want to return to that point, Your Honor, too, in just a moment, because I know we've got to get to H-4, but I want to point out how we're going to get the names and what names those will cover. So there's an important point that we've skipped over, and that's that the party test, which is H-4A, also applies here. And under that test, after the class opt-out period ends, we're going to get the names of the people who are still in the class, who haven't opted out at that point. Yeah, we understand. That's not really ripe for purposes of our discussion here. That's right. And there's no dispute over that. There's a practical matter, and that matters in a mandamus petition. A lot of these horses are going to go out of the barn and do course here. So there is that issue, Your Honor. But let me pursue that because I'm not sure I understand that either. When's the end of the opt-out period? It'll be 35 days after notice goes out, and notice will be going out pretty quickly here. We had our meeting on Thursday, actually, which judged a lot. So just to use a hypothetical, if for some reason that it took us 60 days to get this order out, you're saying that a lot of this would be moot by the time we issued the order? We hope so. At least what will be moot, Your Honor, is knowing the names on the spreadsheets. There will be a lot of names uncovered. But here's the important point. Will you be able to match the names up to the corresponding information on the spreadsheet? We believe we'll get new copies of the spreadsheets with those names uncovered. Oh, I see. But here's the important point, and we're going to get the application files. But here's the important point. Again, I'm back to not suggesting that we should wait 60 days or something like that or that we shouldn't issue a ruling. I'm just trying to figure out whether this rises to the level of mandamus, which essentially is based upon the IRS's premise that this is confidential information and the world as the IRS knows it is going to end if we don't set aside this discovery order when you're suggesting the vast majority of this is going to be available in about 45 days anyway. So I'm just trying to figure out how that fits to mandamus. Sure, and I have a couple of responses to that. First of all, something nobody has talked about is, well, I guess the court has talked about it, is the standard here. Is this the kind of issue we should raise in mandamus? But the other issue is the suggestion that the IRS is sort of guarding the hen house here and that we're the wolf trying to get in I think is incorrect. We're the ones trying to recover damages for these groups, and there are suggestions that this will be disclosed to the public at large. I mean, we have offered before the district court to do something like entering a protective order. I mean, there's no reason why people that fall within the item test but not the party test couldn't have codes assigned to them so that when we make filings or have trial that we can't use those codes. Granted, we'll know, and so the IRS might say, as soon as plaintiff's counsel knows this privacy injury is right here. They would have a point there because there are restrictions on even who inside the government can look at stuff. That's right. But the purpose of our knowledge, Your Honor, would be to actually gain damages for those groups. But here's the other issue. There are still going to be, in all probability, there will still be lines redacted, and here's why. As you learned, I think, in the previous discussion, we don't see the list that notice is going out to. And the reason is because of this argument. We did not want to fight about the, you know. You just want to get it going. We want to get it going. And so we should have an order, which we hope to file by a 28-J letter. We wanted to file it before today, but there's back and forth with us and the government about the contents of this order, where the judge will say this is important to the merits, and, you know, we believe, and we hope the order will say this, although the government doesn't agree, that it's important to identifying who is in the class. So, I mean, clarification of some of the issues, 6103 issues we're talking about, is important going forward in the case for multiple reasons. It is. It is. And the other thing I'd point out, though, there's another way that I think we would get information here. And some of this requires assuming several things about what the definitions in the statute mean. But, in fact, some of these groups are supposed to have been, well, frankly, anybody who's still active should be filing a return. They should be filing a Form 990 every year. Right. Right. And that might even be while you're waiting to have your Form 1023 or Form 1024 granted. Okay. Let's talk about H-4. Okay. You know, the government is here, is very concerned about this interpretation. And, you know, the sort of introductory language, prefatory language, whatever, says a return or return information may be disclosed in a judicial proceeding, but only, and I guess we're dealing with B here, if the treatment of an item reflected on such return is directly related to the resolution of the proceeding. It says return. It doesn't say return information. And I'm kind of, on your side of the ledger here, I'm scratching my head about why this would authorize release of a different category of information, namely return information rather than a return. We have two responses to that. First of all, 6103 is sort of a catch-all statute. It applies to many different kinds of taxpayers and many different types of activities. And, you know, many different things are called a return. Unfortunately, not the Form 990 that people file, or I'm sorry, not the 1023. That's called an application, so we don't get to rely on that. The problem is 6103 in some areas, and I hate to ever say this, but it's a little rough around the edges. And the example I can use, particularly 4 and B, when you read those two together, they don't actually make sense when you read the sentence together. There would have been a way to... Well, how about, yeah, well, that's only if you allied A, C, and D. I mean, you know, if we want to be grammatical here, 4 itself is, there are semicolons after the subsections. The entire thing is a sentence, not just B. Right. And the entire thing would make sense because there are plenty of references to return information in the other subsections, such as C. So that sentence not making sense, unless I'm missing something, doesn't seem to be valid. Well, Your Honor, I think the way to have it make sense would have, if we're going to go into grammar, I think would have been to take away the dash and put in a colon, and then within B, make clear that... The dash colon doesn't matter. Okay. It's not called a colon. Well, whatever we do, you could then go back and you could reform B to make sure that this is, you're not missing one of the two conditions that are necessary to answer what the beginning language sets out. And so an example might be if you tell your kids you can have a dairy product or yogurt for lunch, but only if such yogurt is strawberry. If you give them that, they'll stop and think for a second, and they'll say, well, wait a second, does that mean I really can't have a dairy product for lunch? Well, if you say you can have a dairy product or yogurt for lunch so long as the dairy product is chocolate milk or such yogurt is strawberry, I think they'd understand that they could have chocolate milk, but not strawberry chocolate milk. I agree with that. Not chocolate yogurt. Let me try to make a parallel here. Right. I agree with that. Do you both think you're clearing this up? No, no. But that's why I want to go to the second point. I'm also getting hungry. But the second point is this. You know, the IRS itself has recognized this problem, which is why we have the chief counsel memo telling attorneys and telling agents that when you've got exams, and exams are administrative proceedings under H-4, you can use extrinsic documents that are not the return. Well, frankly, I'm a long way from being interested in their chief counsel memos for purposes of reading a statute, which is kind of what we do all day long up here. In H-4, I mean, I guess let me put it just directly to you. It seems like the prefatory language that you're relying so much on defines the scope of Subsection 4, the overall scope, and it says these two things, return and return information, can be disclosed in a judicial proceeding only if, and then we have four different conditions, and some of them describe conditions where apparently Congress thought those conditions warrant disclosure of both returns and return information. But it would seem like in B, Congress thought those particular circumstances warrant disclosure only of returns. And that just seems like a very, I mean, the government's argument seems very straightforward. That seems like a very straightforward reading. I'm not seeing any grammatical problem. I'm not seeing any surplusage problem. I'm really not seeing any problem. And so what is the problem with saying, yeah, it says some of these provisions, some of these circumstances you disclose both, some you disclose one. Why isn't that Congress's prerogative? Well, I think the problem, I mean, there are other problems here as well. For example, we know that this has to be. Congress, okay. No, I'm sorry. Just go ahead. Sure. I mean, there are textual problems. So, for example, we know that H-4 is the catch-all for all administrative proceedings. We know that. I'm sorry, for, well, for a lot of federal and state judicial or administrative proceedings that pertain to tax administration. So we know that this doesn't just cover cases where a taxpayer's liability is an issue. So, I mean, why is this reading wrong, though? I'm kind of fixated on that. Right. It seems very reasonable. Well, the problem is, and I think it's a back and forth on whether it's ungrammatical. The problem is that we're missing the guidance in B about when you can use return information. Never is the guidance, it would seem. Well. For that particular circumstances, you don't get to disclose return information. That's what Congress is telling us. Right. Well, but our response is that the agency that's charged with interpreting this and tell this case actually tells its people, no, you can use return information. We're not at Chevron 2. We're at Chevron 1. Well, we could be at Skidmore. We could be using Skidmore deference here. We don't go anywhere unless, and I guess, anyway, I mean, forget about what the agency is saying. I'm just not seeing a problem, and I'm asking substantively. But you've kind of given some thoughts. That's the best answer we can give. The only other thing I'd say is that. Let me ask you a related question that now you're going to really think is off the wall. It just occurred to me in listening to you. Let's assume for just a second that H4B is read the way you want it to read and also permits disclosure of return information. That's what you and Judge Kethledge have been talking about. Even if you assume that, what significance do we attribute to the language about reflected on a return? Does the word on make a difference here? I understand from the government standpoint there may be a lot of things that are captured within the phrase return information, all this other stuff like the control number, for example. But that's not on the return somebody filed, and I'm guessing it's probably not in many instances written on there by some scribe across the street in the Peck Building either. That's right. But I would say this. Does that matter? Well, I think what matters, frankly, I think the entire phrase treatment of an item reflected on such return, I mean, most of those don't. Here's the reason I'm asking. If somebody files something with the IRS, I understand the heightened privacy interest on something that the taxpayer or the applicant files. But the IRS does a lot of things behind the scenes, and that may well or not be return information. That I get. But if we're just looking at narrowly H4B, all this other stuff that the IRS is seemingly most concerned about is not actually on the return, is it? Well, it's not. So then if we're reading that literally, how do you get disclosure of something under H4B, under the district court order, that's not on the application or on the return? Well, that's the problem. That's why we're arguing the item test today. But that probably means you've got to go someplace else to get it, doesn't it? You've got to go to the party test. But I can't leave this unsaid. It's important to note, Your Honor, that many of these entities have filed returns, maybe even during the application process. And if we're going to be limited to the word return, that does not mean the names are out, because the very first item on a return is the name an entity has chosen for itself. That's the very first thing you put on there, and that's what you represent to the IRS is your name. But if this notice goes out, eventually, I'm getting ahead of myself here. The notice goes out, and they opt in. Is this an opt in, I'm guessing? It's an opt out. It's an opt out. Okay, they don't opt out. So now they're in the class. And at that point, presumably, there's going to be a way for you to communicate with them, right? That's right. And so they can waive any of this privacy stuff, can't they? Well, Your Honor, once they're parties, under the party test, it's not an issue. The worry here is we don't know who is even getting the notice. So we're going to get this list of people, and we'll wonder, did the right people get it? But you've apparently acquiesced to that to get things going. But we want to be able to look back and say, okay, we know that this is a tea party group in Columbus, Ohio. Later on, you want to get more information about those who do not opt out. Well, those whose file we don't have. I'd like to confirm that the class notice went out to whom? We believe we have a duty to do that. Okay, I got it. Anything else? We're way over our time, but it's not your fault. Thank you. You're my fault. No, it's the fascinating nature of the murky world of the IRS. So, Mr. Erta, do you have anything compelling you need to add? Just for a second, Judge. Go for it. I won't add anything on the language of H-4B. I think that the Court understands where that lies. I was just going to very briefly address your point, Judge McKee, which you asked me as well. Does this rise to the level of mandamus? I just return to the fact that this Court has stated that where the district court's orders raise new and important problems or issues of law first impression, that's one of the five factors. And that's certainly here. And we've been talking about the opt-out period. We're protecting the confidentiality of those who opt out. Those are the taxpayers that are possibly affected. So does this rise to the level of mandamus? We believe it does. This is an incorrect interpretation of a very important confidentiality provision that will have real-world impacts on those that opt out and, quite frankly, presents a new issue of law in this Court, although the Federal Circuit has already firmly explained why the government's interpretation on the statute is correct. Real quick. Let's set aside the merits of this petition. Let's set aside your H-4 argument. I understand that's a very serious argument. And this is not directed at you personally because your name appears on the petition for the first time. But, I mean, I've actually gone back and read the hearing transcripts or the discovery in this case. I've read the correspondence. I was involved in discovery fights a lot as counsel. Frankly, that was the most miserable part of the job, was dealing with somebody who's being unreasonable in discovery. You're in a state of nature with these people, and nobody wants to have to run to the judge, and it's just a difficult process. And I actually really look forward to having the United States on the other side because normally I didn't get that kind of stuff. That said, I think they've been getting that kind of stuff in this case. As an example, this October 3, 2014 letter from Mr. Cergy to Mr. Grime, you know, about disclosing the names of the employees who worked on these files, I think it's kind of tendentious to say that that's return information. I understand your argument. It's a coherent argument. But then the letter goes on to say, well, you know, 6104 would make everything public, including the names of the employees who worked on the applications. But it's unduly burdensome for us to dig those up. And I must say, I mean, for the IRS in this case of all cases, where the inspector general has said these people, including these named plaintiffs, were forced to cough up this so-called additional information, 3,000 pages in their case, were forced to cough that up, and what kind of obliviousness would allow the agency to say it's too burdensome for us to sort out who actually made them do that? It's not directed towards you, but if it were me, the district judge, reading this, what she's been put through, Rule 37 would have been used long before this. And I just hope that if and when we see this case again, it doesn't have this sort of what appears to be studied obstructionism by the agency in the discovery process of this case. It's not your fault. I think that one of the things, and I'm not sure if you want to respond. You don't have to. If you just simply say, I understand your position, Judge. We'll try to do better. Nothing further. That's good. That would be very prudent on your part. I think the court is right on that. You know, Mr. Erta, it's really not for you, the message. But the message has been received. And that said, I genuinely appreciate the manner in which you've handled yourself in a challenging argument. Thank you, Judge. Thanks. All right. Very interesting case, obviously. The matter will be submitted. We have one more case to argue.